IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

DAN M. HOLLAND                                                                           PLAINTIFF

V.                                      NO. 3:20-cv-00312-ERE

COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                                          DEFENDANT

## ORDER

## I.  Introduction:

On April 5, 2017, Dan M. Holland, who was born on January 13, 1972, filed a Title XVI application for supplemental security income benefits. (Tr. at 12, 38). In the application, he alleged disability beginning on October 21, 2016. An administrative law judge (ALJ) denied Mr. Holland's application in a decision dated December 9, 2019. (Tr. at 23-24). The Appeals Council denied his request for review on August 18, 2020. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Holland has requested judicial review. For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

1

**II.    The Commissioner's Decision:**

At step one of the required five-step analysis, the ALJ found that Mr. Holland had not engaged in substantial gainful activity since the application date of April 5, 2017.[2] (Tr. at 12-14). At step two, the ALJ determined that Mr. Holland has the following severe impairments: migraines, congestive heart failure (CHF), chronic obstructive pulmonary disease (COPD), coronary artery disease (CAD), obstructive sleep apnea (OSA), obesity, depression, and anxiety. (Tr. at 14).

After finding that Mr. Holland's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that he had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with exceptions: (1) he can no more than occasionally stoop, kneel, crouch, and crawl: (2) he cannot work around hazards such as unprotected heights or dangerous moving mechanical parts; (3) he must avoid concentrated exposure to temperature extremes, dust, fumes, humidity, chemicals, or other pulmonary irritants; (4) he retains the mental residual

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work23; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

For supplemental security income applications, the relevant time-period begins on the date that the application was filed. (Tr. at 12-13).

functional capacity to perform work where the interpersonal contact is only incidental to the work performed (meaning a limited amount of meet and greet and no sales or solicitations); (5) he can perform simple tasks that can be learned in 30 days and require little independent judgment to perform those tasks; and (6) he can tolerate occasional change in a routine work setting. (Tr. at 16-17).

The ALJ next found that Mr. Holland was unable to perform any of his past relevant work. (Tr. at 22). At step five, the ALJ relied upon the testimony of a Vocational Expert (VE) to find that, considering Mr. Holland's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, such as document preparer and table worker. (Tr. at 23). Therefore, the ALJ found that Mr. Holland was not disabled. (Tr. at 23-24).

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    B.   Mr. Holland's Arguments on Appeal

Mr. Holland contends that the evidence supporting the ALJ's decision is less than substantial. He argues that: (1) the ALJ did not properly evaluate the medical opinions; (2) the ALJ failed to conduct a sufficient analysis of his subjective complaints; and (3) the ALJ did not fully and fairly develop the record. After

reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Mr. Holland, who continued to smoke a half-pack of cigarettes per day, against doctors' advice, suffered from COPD, CAD, and CHF. He complained of shortness of breath and chest pain, and had open heart surgery in February 2017. (Tr. at 40). He only saw his cardiologist twice after that. (Tr. at 50). Mr. Holland alleges that he did not have the finances to see a cardiologist more frequently, and Darla Johnston, his treating nurse practitioner, testified at the hearing that she paid for one of the visits to the cardiologist.[3] (Tr. at 49-51). Still, at a March 2019 visit with the cardiologist, the clinical cardiac exam was normal, and the cardiologist recommended conservative medication management. (Tr. at 1191-1195). The cardiologist also counseled Mr. Holland to stop smoking, but Mr. Holland said he was "not ready to quit."[4] *Id*. The cardiologist told him to continue activities as tolerated. *Id*.

---

[3] See *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (although claimant claimed he could not afford medication, there was no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking three packs of cigarettes a day to help finance pain medication).

[4] See *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (the ALJ correctly discounted claimant's credibility when claimant failed to stop smoking despite physician's orders).

Early in 2019, Mr. Holland reported that he felt great. (Tr. at 1047-1050). At a May 2019 visit to a pain management doctor, Mr. Holland's respiratory and cardiac exams were normal, and the doctor recommended that Mr. Holland exercise, lose weight and cut out salt. (Tr. at 54-55, 1379-1385). The Court notes that Ms. Johnston testified that Mr. Holland could not afford to pay for a low-salt diet. (Tr. at 51). Mr. Holland's BMI during the relevant time-period was 33. (Tr. at 19).

After the hearing, the ALJ sent Mr. Holland for a cardiac consultative examination. The cardiologist, Ron Revard, M.D., noted that Mr. Holland was in no acute distress and had normal and clear breath sounds, with grossly normal musculoskeletal and neurological exams. (Tr. at 1387-1396). Dr. Revard opined that Mr. Holland could lift no more than 20 pounds, could sit or stand for four hours per day, and could walk a total of 30 minutes. (Tr. at 1392). In short, Dr. Revard opined that Mr. Holland could not perform even sedentary work. Dr. Revard stated that his assessment was based primarily on subjective reports from Dr. Holland, and that he did not conduct any objective tests. (Tr. at 1387-1396).

Ms. Johnston filled out a short medical source statement titled "Chronic Fatigue Syndrome Medical Assessment Questionnaire." (Tr. at 1355-1358). She wrote that she had treated Mr. Holland monthly since November 2017. *Id*. She stated that due to chronic fatigue, chronic pain, and insomnia, Mr. Holland could not

function throughout the day.⁵ (Tr. at 1355). She said he would miss more than four days of work per month due to his conditions. (Tr. at 1358).

Mr. Holland also complained of migraines, but the record fails to show regular treatment for migraines, and Mr. Holland admitted he did not want to take migraine medication. (Tr. at 52). Ms. Johnston testified that Mr. Holland reported that he suffered from regular migraines. *Id.*

As for mental impairments, Mr. Holland sought counseling for depression, anxiety, and PTSD. (Tr. at 59-63). He alleges that these conditions are disabling, but also that his therapist can "talk him down from anxiety" and that medications improved his symptoms. (Tr. at 65-70). His treatment was conservative, with counseling and medication, and no psychiatrist actually saw Mr. Holland. (Tr. at 61-63).

Moreover, Mr. Holland said he could do things like volunteer at church, eat at fast food restaurants, care for his young child, and occasionally do dishes. (Tr. at 16, 68-70).⁶ Other than that, he said he lies in his recliner all day. *Id.*

---

⁵ The ALJ did not find these conditions to be severe impairments, which was in keeping with the lack of treatment records related to these conditions.

⁶ Such daily activities undermine Mr. Holland's claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Mr. Holland first asserts that the ALJ did not properly evaluate Ms. Johnston's and Dr. Revard's medical opinions.[7] The ALJ found that neither of Ms. Johnston's opinions (written or testimonial) was persuasive, because she was not a specialist, she had not referred Mr. Holland to a specialist, and Mr. Holland was not taking medications for his alleged migraines. (Tr. at 21). Also, Ms. Johnston's medical source statement was on a checkbox form with no citation to objective evidence. See *Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018) (short checkbox opinions may properly be discounted, if they are conclusory or unsupported by relevant medical evidence). Finally, Ms. Johnston said that she had paid for Mr. Holland to see a cardiologist. See *Walker v. Astrue*, No. 2:07-cv-0053-AGF, 2009 U.S. Dist. LEXIS 21344 *24 (E.D. Mo. March 17, 2009) (ALJ properly discounted witness statement because, among other things, witness was "an interested party with a financial stake in the outcome of the matter.").

---

[7] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017). See *Phillips v. Saul*, 2020 U.S. Dist. LEXIS 110370, No 1:19-CV-00034-BD, at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*. The new regulations govern Mr. Holland's application for benefits.

The ALJ discussed Dr. Revard's opinion and found it to be persuasive in part. The ALJ properly noted that it was based on Mr. Holland's subjective reports, and that the functional limitations were inconsistent with generally normal cardiac exams. The ALJ also noted that the record supported some of Dr. Revard's assigned limitations. The ALJ considered Dr. Revard's opinion in conjunction with those of the two Disability Determination Services medical experts (who reviewed the record and found Mr. Holland capable of light exertional work), and assigned a sedentary RFC with additional limitations. This more restrictive RFC shows that the ALJ gave consideration to Dr. Revard's opinion.

Mr. Holland also contends that the ALJ did not properly evaluate his subjective complaints.[8] On the contrary, the ALJ discussed a variety of factors in his decision. He noted Mr. Holland's work history and his ability to perform some daily activities, he discussed Mr. Holland's medications and response thereto, and he thoroughly addressed the relevant medical findings. (Tr. at 16-23). Thus, Mr. Holland's argument fails.

---

[8] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). An ALJ need not explicitly discuss each factor, and he may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Id.*

Finally, Mr. Holland asserts that the ALJ failed to fully develop the record.[9] The ALJ did send Mr. Holland for a cardiac consultative evaluation after the hearing, noting that Mr. Holland had not provided much in the way of cardiac treatment records. (Tr. at 73-75). Mr. Holland's attorney, upon receiving the cardiologist report, did not proffer any questions to the cardiologist, make any comment on the report, or request a supplemental hearing. (Tr. at 12). Had the attorney objected to the record, he could have said so at that point. Moreover, the objective medical record was consistent; there were no major issue that required further development (beyond the cardiac consultation). The ALJ based his decision off of a fully developed record.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly analyzed the medical opinions and Mr. Holland's subjective complaints, and the record was fully developed. The finding that Mr.

---

[9] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving his disability; the ALJ does not have to play counsel for the claimant and the ALJ's duty to develop is not never-ending. *Id.*; *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

Holland was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 18th day of August, 2021.

_____
UNITED STATES MAGISTRATE JUDGE